

New York
44 South Broadway
White Plains, NY 10601
P: +1 914 997 0500 F:
+1 914 997 0035

Pennsylvania
200 Barr Harbor Drive, Suite 400
West Conshohocken, PA 19428
P: +1 610 941 2760
F: +1 610 862 9777

www.lowey.com

New York
485 Lexington Avenue
New York, NY 10017
P: +1 646 722 8500
F: +1 646 722 8501

Delaware
123 Justison Street
Wilmington, DE 19801
P: +1 302 622 7000
F: +1 302 622 7001

www.gelaw.com

February 5, 2018

**BY ECF**
The Honorable Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007-1312

    Re:    <u>In re London Silver Fixing, Ltd., Antitrust Litig.</u>, No. 14-MD-2573 (VEC)

Dear Judge Caproni:

    We write on behalf of Plaintiffs to alert the Court to recent developments that bear directly on the pending motions to dismiss filed by UBS AG and Merrill Lynch/Bank of America.[1]  On January 29, 2018, the Commodity Futures Trading Commission, the Department of Justice, and the Federal Bureau of Investigation's Criminal Investigative Division announced criminal and civil enforcement actions against three banks and several individuals. UBS, Deutsche Bank, HSBC and former traders at those banks, as well as individuals at other firms, including Merrill Lynch, were charged with spoofing and other offenses.  Deutsche Bank and UBS have agreed to pay $30 million and $15 million respectively to settle the civil charges against them, while HSBC will pay $1.6 million. Plaintiffs respectfully submit herewith: (1) CFTC UBS Order; (2) CFTC Deutsche Bank Order; (3) CFTC HSBC Order; (4) CFTC Complaint against Andre Flotron, a former UBS trader; (5) CFTC Complaint against James Vorley and Cedric Chanu, who, according to public sources, are former Deutsche Bank traders; and (6) DOJ Criminal Complaint (and affidavit of Special Agent A. Wesley Nevens in support ("Nevens Aff.")) against Edward Bases and John Pacilio, who, according to public sources, are former Merrill Lynch traders. These filings detail previously unknown acts of manipulation, confirm that the Court has personal jurisdiction over the Defendants, and support the plausibility of Plaintiffs' allegations.[2]

---

[1] The recent filings also relate to HSBC (as to whom the Court has already sustained claims) and Deutsche Bank (which has settled the claims against it).

[2] The Court can take judicial notice of these filings, which support the inference of a conspiracy.  *Awelewa v. New York City,* No. 11 Civ. 778, 2012 WL 601119, at *2 (S.D.N.Y. Feb. 23, 2012) ("Judicial notice may be taken of . . . criminal complaints"); *In re Foreign Exchange Litig.,* 74 F. Supp. 3d 581, 592 (S.D.N.Y. 2015) (where Court had taken judicial notice of penalties and fines levied by regulators against certain defendants for the very conduct alleged in the Complaint, "[t]he penalties provide[d] non-speculative support for the inference of a conspiracy."); *Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 700 F. Supp. 2d 378, 394 (S.D.N.Y. 2010)("[G]overnment investigations may be used to bolster the plausibility of §1 claims.").

1. **The New Filings Detail Previously Unknown Acts of Manipulation**

The recent filings contain examples of previously unknown acts of manipulation. These acts were carried out by previously unknown traders (*e.g.*, "Trader E" of "Financial Institution 2" and "Trader G" of UBS in the UBS CFTC Order), and traders whose identities were known to Plaintiffs, but whose active role in the conspiracy had yet to be revealed (*e.g.*, Merrill Lynch trader Pacilio).[3]

The UBS CFTC Order details previously unknown manipulative acts and establishes that UBS Trader F regularly engaged in spoofing on the COMEX in an effort to manipulate the prices of Silver futures from within the United States *and* coordinated his efforts with Trader H at Financial Institution 1, which Plaintiffs believe to be Deutsche Bank. For example, the UBS CFTC Order details an April 30, 2010 chat in which Trader F (UBS) admits to manipulating silver prices through spoofing from UBS's offices in Stamford, Connecticut. UBS CFTC Order, at 2. In an August 2, 2010 chat, previously unknown to Plaintiffs, Trader F explains to a fellow UBS Trader: "u know when u were gone I did the regular bid/offer things to spoof" and continues "when I see stuff like that in the futures I been smacking it … *last time me and* [*Financial Institution 1*] *were doing that, worked in our favor* (emphasis in original)." UBS CFTC Order, at 4.

The Nevens Affidavit describes previously unknown acts of manipulation carried out by Bases and Pacilio on behalf of Defendant Merrill Lynch. For example, on November 16, 2010, Pacilio, along with "Bank B Trader #1," intending to manipulate the prices of silver futures, placed spoof orders, stating "guys the algos are really geared up in here. If you spoof this it really moves. That's where a lot of this noise is coming from." Nevens Aff. at ¶ 38. And on February 11, 2011, Pacilio placed spoof orders to manipulate the price of silver futures, telling Bank B Trader #1 "that was me pushing it [. . .] don't do it yourself. I will help you." *Id.* at ¶ 39. This "was intended to induce and often did induce market participants to buy or to sell precious metals futures contracts at prices, at quantities, and at times that they would not have otherwise." *Id.*

The unfolding criminal cases highlight that the information known to Plaintiffs, as alleged in the Third Amended Complaint ("TAC"), is the tip of the iceberg. Discovery will reveal the full extent of the conspiracy, which the Court has already sustained as to two Defendants.

2. **The New Filings Confirm That the Court Has Personal Jurisdiction Over UBS.**

The new filings confirm that Defendants orchestrated manipulative conduct from within the U.S., which harmed U.S. investors and disrupted U.S. markets. "On numerous occasions throughout the Relevant Period,[4] a number of UBS precious metals traders located **in** and outside **the United States** (collectively, the "Traders"), placed orders to buy or sell precious metals futures contracts,

---

[3] The defendants and their co-conspirators are alleged to have defrauded market participants and manipulated the markets by placing hundreds, and in some cases, thousands of "spoof orders," to create the appearance of substantial but false supply and demand and to induce other market participants to trade at prices, quantities, and times that they otherwise would not have traded. Examples of specific previously unknown acts of manipulation include: 1) November 27, 2009 (Communication between Trader A (UBS) and Trader E (Financial Institution 2)); 2) April 30, 2010 (Communication between Trader F (UBS) and Trader G (UBS)); and 3) August 2, 2010 (Communication between Trader F (UBS) and an unidentified UBS Trader). UBS CFTC Order, at 3-4.

[4] "Relevant Period" is "January 2008 and continuing through at least December 2013." UBS CFTC Order, at 2.

including gold and **silver** ("precious metals") with the intent to cancel the orders before execution. By and through the acts of these Traders, UBS engaged in unlawful spoofing." UBS CFTC Order, at 2 (emphasis added). Thus, UBS traders in the U.S. placed spoof orders to buy or sell silver futures contracts. These domestic manipulations are irrefutably suit-related, and substantiate the argument that "foreign" defendants, including UBS, are subject to specific personal jurisdiction for manipulations to wrongfully profit from derivatives traded in the U.S. *See* ECF No. 311, at 2.

3. **The New Filings Support the Plausibility of Plaintiffs' Allegations that Defendants Caused Artificial Prices in the Silver Market, to the Detriment of Less Knowledgeable Market Participants**

The new charges reflect coordinated activity among co-conspirators and provide additional support as to the plausibility of the alleged conspiracy. The UBS CFTC Order states that "UBS … placed orders and executed trades with the intent of manipulating the price of precious metals futures contracts for the purpose of triggering customers' stop-loss orders. **This [sic] UBS trader coordinated his trading with another precious metals trader at another large financial institution ("Financial Institution 1").**" UBS CFTC Order, at 2-4 (emphasis added). Moreover, "Trader F and Trader H at Financial Institution 1 regularly discussed their attempts to manipulate through the stop loss manipulation strategies." *Id.* The UBS CFTC Order also refutes Defendants' contention that no plausible inter-bank conspiracy has been alleged: UBS "Trader F" and Deutsche Bank "Trader H" coordinated their trading "**with the intent of manipulating the price of precious metals futures contracts**" including silver. UBS CFTC Order, at 2 (emphasis added).

The spoof orders often had the effect of artificially depressing or artificially inflating the prices of futures contracts traded on CME, CBOT, and COMEX. The UBS CFTC Order states that UBS "intended to induce other market participants into buying and selling precious metals futures contracts. In engaging in the unlawful spoofing conduct, UBS … also intended to manipulate the prices of the precious metals futures contracts." UBS CFTC Order, at 2. *See also* Bases/Pacilio Criminal Complaint, at ¶ 19. In order to take advantage of the artificial price levels created by their spoof orders, the defendants and/or their co-conspirators are alleged to have executed genuine orders to buy (at the artificially low prices) or to sell (at the artificially high prices) in order to improperly generate trading profits or to illicitly mitigate other trading losses.

While the Court must construe the Complaint in a light most favorable to Plaintiffs, and all inferences must be drawn in Plaintiffs' favor on a 12(b)(6) motion,[5] the UBS CFTC Order confirms Plaintiffs' interpretations of communications cited in the TAC[6] and includes previously undisclosed evidence of agreements among co-conspirators to manipulate silver prices. The TAC presents more than "enough facts to establish a reasonable expectation that discovery will reveal evidence of illegal agreement." *In re Dental Supplies Antitrust Litig,.* 16-cv-696, 2016 WL 5415681, at *3 (E.D.N.Y. Sept. 28, 2016) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 556 (2007)). The recent filings certainly add to that expectation. The communications in the UBS CFTC Order reflect coordinated activity and

---

[5] *See Simon v. KeySpan Corp.*, 694 F.3d 196, 198 (2d Cir. 2012); *see also Anderson News, LLC v. Am. Media, Inc.* 680 F.3d 162, 185 (2d Cir. 2012) ("The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion.").
[6] For example, the Jan. 7, 2011 chat between UBS Trader F and Trader H of Financial Institution 1 is cited in both the TAC at ¶ 344 and the UBS CFTC Order, at p. 5 as evidence of stop-loss order triggering.

reinforce Plaintiffs' assertion that Defendants had a "unity of purpose" to manipulate Silver prices. *Anderson News,* 680 F.3d at 183.

We are available at the Court's convenience should Your Honor have any questions related to this matter.

Respectfully submitted,

/s/ Vincent Briganti            /s/ Robert Eisler
Vincent Briganti                Robert Eisler


cc:   Counsel of Record (via ECF)