December 1, 2020

**VIA ECF**

The Honorable Valerie E. Caproni
United States District Judge, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

      Re:    *In re London Silver Fixing Antitrust Litig.*,
               Case No. 14-MD-2573 (VEC) (S.D.N.Y.)

Dear Judge Caproni:

      Pursuant to Part 8(a)(1)(vii) of the Discovery Schedule (Dkt. 371), as amended by the Court's May 24, 2019 Order, the parties jointly submit this letter updating the Court on the parties' recent discovery progress.

      **1.**    **Fact Depositions**

      **HSBC:**  Plaintiffs and HSBC continue to work to schedule depositions and have currently identified dates in January 2021 for the depositions of Kevin Danca and HSBC's 30(b)(6) designee as to certain topics.

      HSBC's counsel has stated that it does not expect to represent seven of the ten fact witnesses on Plaintiffs' amended preliminary witness list, as served on August 27, 2020. Plaintiffs' counsel is in discussions with counsel for Darren Botha regarding the logistics and scheduling of his deposition.

      On March 27, 2020, HSBC informed Plaintiffs that "Counsel for HSBC currently intends and expects to represent for purposes of their depositions each of the individuals Plaintiffs have identified as current or former HSBC employees. As we have previously stated, any effort to contact any of these individuals should be directed to HSBC's counsel in this case." On a meet and confer on July 30, 2020, HSBC stated that any overseas former employees on Plaintiffs' preliminary witness list may insist on Hague Convention procedures, and HSBC would be better able to advise on the representational status of overseas former employees if Plaintiffs reduced their preliminary witness list of 32 individuals. On September 16, 2020, HSBC informed Plaintiffs that "[b]ased on current information, King & Spalding LLP does not expect to represent the following individuals on Plaintiffs' August 27, 2020 Preliminary Witness List for purposes of their depositions: Simon Atkinson; Darren Botha; Jeremy Charles; Peter Drabwell; John Levin; David Rose and Joseph Stefans," *i.e.*, 7 of the 10 witnesses plaintiffs indicated they intend to depose. Since that time, Plaintiffs have repeatedly requested that Defendants provide updates on these issues so that the witnesses can get placed on the deposition calendar as soon as possible. Shortly after receipt of the September 16 letter, and in subsequent electronic and telephonic communications, Plaintiffs requested the identity of the counsel who will represent these witnesses, as well as contact information for these witnesses. HSBC has provided representation information as to one witness and will meet and confer with Plaintiffs this week to provide additional representation information. Plaintiffs may need to seek the court's intervention on this issue.

**BNS:** BNS has requested that *Silver* and *Gold* Plaintiffs coordinate on the scheduling of the deposition of Peter Smith, who is also on both sets of Plaintiffs' preliminary witness lists. Plaintiffs confirm they are working to provide coordinated deposition dates for Peter Smith. More generally, BNS has requested that *Silver* and *Gold* Plaintiffs coordinate on the scheduling of depositions for overlapping witnesses going forward. Plaintiffs have been and will continue to attempt to coordinate on the scheduling of depositions for overlapping witnesses in the *Gold* case, however, Plaintiffs maintain that in certain circumstances and for different strategy reasons, Plaintiffs in the different cases may desire to call witnesses at different times during the eight-month deposition period, and remote depositions reduce the inconvenience of double travel that might otherwise exist. BNS's position is that the Court has already determined that "[d]iscovery in this litigation shall be coordinated with discovery in [*Gold*], to the extent that the Parties should attempt (where possible) to cooperatively resolve any discovery issues impacting both cases so as to minimize duplication and burden on the Parties, the Court, and nonparties" (Discovery Schedule 9/6/2018, ECF No. 371), and that travel planning and expense is not the only burden at issue here. The witnesses in *Gold* and *Silver* will be asked about matters that took place a decade ago or longer, which will require substantial preparation to refresh their recollection. This will result in significant disruption to their lives and jobs for multiple days, and they should not be asked to do that twice. Instead, depositions in the two actions should be coordinated to take place reasonably close in time so that there is a single disruption for the witness.

The deposition of Anton Down has been scheduled for December 8, 2020 at 6 AM EST. Plaintiffs have also contacted counsel for Robert Mizrahi regarding the scheduling of his deposition.

**Plaintiffs:** The deposition of KPFF Investment Inc. has been scheduled for January 5, 2021 at 10 AM PT.

2. **Remote Depositions**

The Parties have agreed that U.S. Legal will be the preferred remote deposition vendor.

3. **30(b)(6) Depositions**

On July 22, 2020, Plaintiffs served Rule 30(b)(6) deposition notices on BNS and HSBC. On July 30, 2020, the Parties met and conferred regarding the Notices, and Defendants requested that Plaintiffs narrow their Deposition Topics for efficiency purposes. On August 14, 2020, Plaintiffs offered a compromise on 30(b)(6) Topics, reserving their rights. Defendants informed Plaintiffs that they were amenable to Plaintiffs' proposal in principle, but had some proposed adjustments on how certain deposition topics were categorized, which Defendants sent Plaintiffs on October 22, 2020. Plaintiffs accepted portions of Defendants' proposal and rejected others in a scheduling communication sent to HSBC as described above. Defendants reserve their right to object to the Deposition Topics that Plaintiffs have noticed. Plaintiffs reserve the right to challenge Defendants' objections on any grounds.

4. **Deposition Cross Notices**

On November 18, 2020, Defendants sent Plaintiffs a proposal regarding the procedures to be followed in connection with providing notice for the cross-noticing of depositions, in addition to the provisions of the Deposition Protocol, to which Plaintiffs responded on November 20, 2020. The parties continue to meet and confer on this issue.

5.     **Deutsche Bank Settlement**

The Parties have reached agreement regarding the production of non-settling Defendants' domestic and foreign counterparty information to an agent of Defendants' choosing, *i.e.*, Rust, Inc. Rust will mail notices and claim forms to non-settling Defendants' counterparties, who may then choose to file claims, opt out or object, as they deem appropriate. Defendants will provide their counterparty information to Rust promptly once Rust is engaged.

The last status letter, dated November 2, 2020, stated: "The Parties have reached agreement regarding the production of non-settling Defendants' domestic and foreign counterparty information to an agent of Defendants' choosing, *i.e.*, Rust, Inc. Plaintiffs have requested that Defendants provide counterparty information to Rust by Wednesday November 4, 2020, so that notices can go out to those counterparties in accordance with the schedule so ordered by the Court. Defendants expect to provide their counterparty information to Rust as soon as possible, but at this time do not anticipate that they will likely be able to complete their retention negotiations and provide data to Rust by November 4." On November 18, 2020, Defendants requested that Plaintiffs, in order to address certain data privacy concerns, present a proposed order to the Court directing Defendants to produce counterparty information to Rust, and sent a draft of the proposed order to Plaintiffs. After meeting and conferring about the need for such an order, on November 23, 2020, Plaintiffs revised the draft order to request that Defendants produce their counterparty information to Rust by November 30, 2020. Because Defendants are still finalizing the engagement of Rust, and cannot provide counterparty information until Rust is engaged, Defendants cannot agree to Plaintiffs' revisions.

On November 24, 2020, Defendants sent Plaintiffs the current draft of their engagement letter with Rust (which Rust is still reviewing), which set out that Rust's fees are payable from the settlement funds, and that Plaintiffs will be responsible for paying the fees if they are not paid out of the settlement funds. In order to facilitate this, Defendants proposed that Plaintiffs become a signatory to the agreement or enter into a separate agreement regarding their payment obligations. On November 30, 2020, Plaintiffs rejected Defendants' proposal but agreed that the reasonable and customary expenses incurred by Rust (as audited and approved by Interim Co-Lead Counsel for the Class) would be presented to the Settlement Administrator as settlement-related expenses to be paid from the Settlement Fund. Defendants were informed by Rust on the evening of December 1, and subsequently informed Plaintiffs, that Rust had agreed to the last version of the engagement letter Defendants provided to Rust, which included a signature block for Plaintiffs acknowledging responsibility for fees. Thus, the principle terms remaining to be negotiated are payment security for Rust, now put in jeopardy by Plaintiffs' refusal to bear Defendants' reasonable expenses necessary to effectuate a settlement to which Defendants are not a party, and the execution of the Standard Contractual Clauses ("SCC") approved by the European Commission for data transfers between EU and non-EU countries. The parties continue to meet and confer on this issue.

Plaintiffs have advised Defendants that the engagement of Rust needs to be finalized and the production of counterparty information to Rust needs to occur **immediately.** As noted in the November status letter, Defendants expect to provide their counterparty information to Rust as soon as possible, but cannot do so until Rust is engaged, and thus cannot commit to a date certain by which to provide such information. Defendants note that unlike Plaintiffs in the *Gold* action, who opened discussions with Defendants at least ***six months in advance*** of seeking approval on a

notice plan, Plaintiffs here did not consult Defendants or take any steps to address data privacy concerns before seeking approval of a notice plan. Indeed, as acknowledged below, Plaintiffs did not even seek counterparty information, let alone engage Defendants on related data privacy issues, until *after* seeking approval of a notice plan. Plaintiffs' oversight in this regard should not prejudice Defendants.

Plaintiffs note that starting on June 26, 2020 – the day after Plaintiffs filed their Motion For An Order Approving Class Acting Notice Plan, Preliminarily Approving Distribution Plan for Class Action Settlement With Defendant Deutsche Bank, and Scheduling Hearing For Final Approval Of The Settlement – Plaintiffs have repeatedly requested counterparty information from Defendants. Plaintiffs understand that Defendants have been negotiating the Rust agreement for at least two months and, despite representing that BNS has collected the counterparty information and HSBC has collected part of the information, Defendants still have not produced the information as agreed upon. Defendants note that they have not breached any agreement; the agreement quoted above was to produce their data to an "agent" of Defendants' choosing, and Rust will not be an agent of Defendants until the retention agreement is finalized and executed. Plaintiffs plan to file a motion and proposed order before the Court requiring Defendants to finalize the engagement details with Rust and to provide counterparty information by a date certain if Defendants do not complete the engagement with Rust and provide counterparty information by Friday, December 4, 2020 or another agreement can be reached. Defendants will oppose any motion seeking to require production of counterparty information to Rust or any other person or entity until a satisfactory retention is effectuated.

### 6. Privilege Logs

On October 23, 2020, Plaintiffs served privilege log deficiency letters on HSBC and BNS, and offered to meet and confer on the issues raised therein. The parties meet and conferred on November 5, 2020 to try to resolve any issues. While Defendants disagree that their privilege logs are deficient, they agreed to produce revised privilege logs with certain metadata requested by Plaintiffs. HSBC produced their revised logs on November 18, 2020, and BNS produced their revised logs on November 25, 2020. Plaintiffs are evaluating Defendants' revised logs for deficiencies.

### 7. Third Party Unmasking

Plaintiffs have been diligently working with multiple third parties in an attempt to receive their relevant Silver transaction data pursuant to subpoenas. On September 15, 2020, in response to concerns raised by third parties, Plaintiffs proposed that such unmasked transaction data could be subject to an "Expert Eyes Only" designation and that reference to third party transaction data in public filings could be anonymized. In a meet and confer on September 30, Defendants stated that the "Expert Eyes Only" designation would be problematic, particularly in preparing expert reports.

In response to Defendants' stated concerns, Plaintiffs proposed a compromise that would designate such unmasked third party transactions as "Outside Counsel and Expert Eyes Only," which would allow both Defendants' counsel to view the unmasked transaction data, but would prohibit business personnel and client contacts from viewing their competitors' data.

On October 22, 2020, Defendants informed Plaintiffs they will not accept a broad "Outside Counsel and Expert Eyes Only" unmasking approach, as neither party knows how expert analysis will unfold, and disagree that anonymized data would necessarily be sufficient for in-house counsel to participate in the expert report process. Defendants also informed Plaintiffs at that time that they were willing to discuss particular concerns raised by any third party.

Plaintiffs and Defendants jointly met and conferred with two of the third parties regarding their concerns, and are continuing to discuss possible solutions and arrange calls with additional third parties. Since November 18, 2020, Plaintiffs have twice requested availability from Defendants to schedule additional calls and are still awaiting a response. Defendants note that since November 10, they have proposed more than a dozen 1-hour windows for such calls, and Plaintiffs scheduled only three calls. Defendants will continue to identify windows in which Plaintiffs can arrange calls with third parties. Plaintiffs note that Defendants have taken anywhere from 2 – 8 business days to respond to Plaintiffs' requests for availability and have never provided availability more than 3 days in advance, despite Plaintiffs specifically requesting dates further out. Moreover, Plaintiffs are of course beholden to the availability of third parties when coordinating these calls. The Parties will continue to work together to attempt to schedule the third party calls.

Respectfully submitted,

| /s/ Deborah A. Elman | /s/ Thomas Skelton |
|---|---|
| Robert G. Eisler | Vincent Briganti |
| Deborah A. Elman | Thomas Skelton |
| Chad Holtzman | Christian Levis |
| GRANT & EISENHOFER PA | Jonathan Seredynski |
| 485 Lexington Avenue, 29th Floor | LOWEY DANNENBERG P.C. |
| New York, NY 10017 | 44 South Broadway, Suite 1100 |
| | White Plains, NY 10601 |

*Interim Co-Lead Counsel for Silver Plaintiffs and the Proposed Silver Class*

| /s/ Stephen Ehrenberg | /s/ Damien J. Marshall |
|---|---|
| Stephen Ehrenberg | Damien J. Marshall |
| William H. Wagener | KING & SPALDING LLP |
| Virginia R. Hildreth | 1185 Avenue of the Americas 34th Floor |
| SULLIVAN & CROMWELL LLP | New York, NY 10036 |
| 125 Broad Street | |
| New York, NY 10004 | |

*Attorneys for The Bank of Nova Scotia Defendants and Liaison Defense Counsel*    *Attorneys for the HSBC Defendants*