

January 19, 2023

<u>**VIA ECF**</u>

The Honorable Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square, Courtroom 443
New York, New York 10007-1312

      Re:    *In re London Silver Fixing, Ltd., Antitrust Litig.*,
            <u>Nos. 14-MD-2573 (VEC), 14-MC-2573 (VEC) (S.D.N.Y.)</u>

Dear Judge Caproni:

      Plaintiffs write to draw the Court's attention to the amicus brief filed today by the United States Commodity Futures Trading Commission in support of the plaintiff's petition for rehearing *en banc* of the amended opinion in *Laydon v. Cooperatieve Rabobank U.A.*, 55 F.4th 86 (2d Cir. 2022), discussed in Defendants' reply brief in support of their pending Motion for Judgment on the Pleadings, ECF No. 607, as well as in both Plaintiffs' and Defendants' sur-replies. ECF Nos. 611, 615. The amicus brief is attached hereto as Exhibit A.

      Respectfully submitted,

      <u>/s/ Vincent Briganti</u>

# EXHIBIT A

# 20-3626(L), 20-3775(XAP)

In the

## United States Court of Appeals
### For the Second Circuit

JEFFREY LAYDON, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,
*Plaintiff-Appellant-Cross-Appellee*,

v.

COÖPERATIEVE RABOBANK U.A., BARCLAYS BANK PLC, SOCIÉTÉ GÉNÉRALE S.A.,
*Defendants-Appellees-Cross-Appellants*

THE ROYAL BANK OF SCOTLAND GROUP PLC, UBS AG, LLOYDS BANKING GROUP PLC, UBS SECURITIES JAPAN CO., LTD., THE ROYAL BANK OF SCOTLAND PLC, RBS SECURITIES JAPAN LIMITED,
*Defendants-Appellees*

On Appeal from the United States District Court
for the Southern District of New York (No. 1:12-cv-03419)

## BRIEF FOR AMICUS CURIAE U.S. COMMODITY FUTURES TRADING COMMISSION IN SUPPORT OF REHEARING EN BANC

Robert A. Schwartz
  *General Counsel*
Anne W. Stukes
  *Deputy General Counsel*
Martin B. White
  *Senior Assistant General Counsel*
Kyle M. Druding
  *Assistant General Counsel*
U.S. COMMODITY FUTURES TRADING COMMISSION
1155 21st Street, N.W.
Washington, D.C. 20581
mwhite@cftc.gov

Phone: (202) 993-1390
Fax: (202) 418-5127

## CORPORATE DISCLOSURE STATEMENT

Amicus Curiae the U.S. Commodity Futures Trading Commission is an agency of the United States government.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................ i

IDENTITY AND INTEREST OF AMICUS CURIAE............................................ 1

BACKGROUND ................................................................................................... 1

    Legal Context. ................................................................................................. 1

    The Panel Decision. ....................................................................................... 3

ARGUMENT ......................................................................................................... 4

    I.     The *en banc* Court should reconsider the *Parkcentral/Prime* "predominantly foreign" test. ................................................................... 4

    II.    The panel decision should be reheard to consider whether its extraterritoriality analysis was consistent with the CEA manipulation provision at issue. ................................................... 6

    III.   The panel's application of the "predominantly foreign" test to CEA issues should be reheard. ............................................................ 9

CONCLUSION .................................................................................................... 11

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                                    <u>**Page(s)**</u>

*Amaranth Nat. Gas Commodities Litig., In re*,
   587 F. Supp. 3d 513 (S.D.N.Y. 2008) ...................................................7

*Cargill, Inc. v. Hardin*,
   452 F.2d 1154 (8th Cir. 1971) ...........................................................7

*Cavello Bay Reinsurance Ltd. v. Shubin Stein*,
   986 F.3d 161 (2d Cir. 2021) ..............................................................5

*Frey v. Commodity Futures Trading Comm'n*,
   931 F.2d 1171 (7th Cir. 1991) ...........................................................7

*Great Western Food Distribs., Inc. v. Brannan*,
   201 F.2d 476 (7th Cir. 1953) ............................................................7

*Morrison v. National Austl. Bank Ltd.*,
   561 U.S. 247 (2010)................................................................ 1, 5, 8

*Parkcentral Global Hub Ltd. v. Porsche Automobile Holdings SE*,
   763 F.3d 198 (2d Cir. 2014) ..............................................................2

*Prime Int'l Trading, Ltd. v. BP P.L.C.*,
   937 F.3d 94 (2018).......................................................... 2, 6, 9, 11

*RJR Nabisco, Inc. v. European Cmty.*,
   579 U.S. 325 (2016).....................................................................1, 4

*SEC v. Morrone*,
   997 F.3d 52 (1st Cir. 2021).............................................................4

*Stoyas v. Toshiba Corp.*,
   896 F.3d 933 (9th Cir. 2018) ..........................................................4

*WesternGeco LLC v. ION Geophysical Corp.*,
   138 Sup. Ct. 2129 (2018)......................................................... 1, 2, 4

**Statutes:**

Commodity Exchange Act, 7 U.S.C. §§ 1-26................................................................1

    7 U.S.C. § 1a(6)............................................................................................................7

    7 U.S.C. § 1a(9)..........................................................................................................10

    7 U.S.C. § 1a(19)(iii).................................................................................................10

    7 U.S.C. § 1a(20)........................................................................................................10

    7 U.S.C. § 1a(40)..........................................................................................................6

    7 U.S.C. § 2(a)(1)(A)....................................................................................................1

    7 U.S.C. § 2(d) (2001)................................................................................................10

    7 U.S.C. § 5(a)..............................................................................................................8

    7 U.S.C. § 5(b)..............................................................................................................8

    7 U.S.C. § 7(d)............................................................................................................10

    7 U.S.C. § 9(c)(1)..........................................................................................................9

    7 U.S.C. § 13(a)(2) ............................................................................................. 3, 6, 8

    7 U.S.C. § 25..................................................................................................................3

    7 U.S.C. § 25(a)(1)(D) ..................................................................................................3

Dodd-Frank Wall Street Reform and Consumer Protection Act,
    Pub. L. No. 111-203, § 723(a)(1)(A), 124 Stat. 1373, 1673 (2010) ....................10

Securities Exchange Act:
    15 U.S.C. § 78j(b) .................................................................................................... 8

**Legislative Material:**

S. Rep. No. 93-1131 (1974) ................................................................................8, 10

## IDENTITY AND INTEREST OF AMICUS CURIAE

The CFTC is an independent federal agency charged with enforcing the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 1–26. The CFTC has jurisdiction over commodity derivatives such as futures contracts and, to a lesser extent, the underlying commodities. *See* 7 U.S.C. § 2(a)(1)(A). Because commodity markets are international, the CFTC has an interest in having extraterritoriality standards correctly applied in CEA cases.

This case raises the important issue of whether the amended panel opinion applied extraterritoriality standards to the manipulation of prices of futures contracts on U.S. exchanges via conduct outside the country in a fashion that is inconsistent with Supreme Court precedent and with the applicable CEA provision. Trans-national manipulation cases arise frequently in this Circuit, so it is important that errors not be embedded in Circuit precedent.

## BACKGROUND

### Legal Context

In *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325 (2016), and *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129 (2018) the Supreme Court established a test for determining whether a statutory claim is domestic or extraterritorial when it has both foreign and domestic elements. Under this test, a

1

court must determine the "focus" of the statute. The focus is the "object of [the statute's] solicitude." *WesternGeco LLC*, 138 S. Ct. at 2137 (alterations and quotation marks omitted). The focus may be conduct; or parties and interests the statute protects. *Id*. If the domestic elements are within the "statutory focus," the claim is domestic, even if other elements are foreign. *Id*. If not, the claim is extraterritorial. *Id*.

In *Parkcentral Global Hub Ltd. v. Porsche Automobile Holdings SE*, 763 F.3d 198 (2d Cir. 2014) (per curiam), a panel of this Court held that domestic conduct within the focus of a statute is necessary but not sufficient for a domestic claim; and that, even if a claim involves domestic conduct within a statute's focus, the claim is extraterritorial if it is "so predominantly foreign as to be impermissibly extraterritorial." 763 F.3d at 215-16. This Court applied *Parkcentral* to the CEA in *Prime International Trading, Ltd. v. BP P.L.C.*, 937 F.3d 94, 105 (2018). *Prime* held that the focus of the CEA manipulation provisions is "manipulation in commodities markets" and "preventing manipulation of the price of any commodity" but, in practice, emphasized the location of manipulative conduct, as opposed to targeted U.S. markets, in its analysis. *Id*. at 107-08. *Parkcentral* and *Prime*, as applied here, should be reconsidered en banc because they are inconsistent with Supreme Court law and the CEA and are the subject of a circuit split.

2

**The Panel Decision.**

Plaintiff alleged that he was injured because he traded Euroyen TIBOR futures contracts on the Chicago Mercantile Exchange ("CME") at prices distorted by defendants' manipulative actions, which occurred largely overseas. Plaintiff relied on 7 U.S.C. §§ 25, which creates a private action for CEA violations, and 13(a)(2), which makes it unlawful to manipulate "the price of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity."

The panel correctly found that the focus of section 25 is "transactional," and that plaintiffs under section 25 must show a violation of a substantive CEA provision. Op. at 13; *see* 7 U.S.C. § 25(a)(1)(D). At that point, the panel should have determined the focus of the substantive manipulation provision relied upon by the plaintiff. Instead, without considering the focus of section 13(a)(2), it found plaintiff's claims to be extraterritorial based on the *Parkcentral/Prime* "predominantly foreign" test. Op. at 14-16. It did so because (1) the relevant CME futures contract was tied to the value of a "foreign asset;" and (2) the manipulative conduct occurred almost entirely abroad and, according to the opinion, only indirectly affected the CME price. *Id.*

3

## ARGUMENT

### I.     The *en banc* Court should reconsider the *Parkcentral/Prime* "predominantly foreign" test.

The panel decision should be reheard en banc because it relied on the *Parkcentral/Prime* "predominantly foreign" test which is inconsistent with Supreme Court precedent and deepens a circuit split.  Post-*Morrison* Supreme Court cases have made clear that the focus test applies affirmatively and is sufficient to establish that a claim is domestic.  In *RJR Nabisco*, the Court stated flatly, "If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad."  579 U.S. at 337.  *WesternGeco* reiterated that courts must ask whether facts relevant to the statutory focus occurred in United States territory and, "[i]f it did, then the case involves a permissible domestic application of the statute." 138 S. Ct. at 2136.  *WesternGeco* found a claim to be domestic based on this criterion.  *Id*. at 2139.  *Parkcentral*, and its application to the CEA in *Prime*, are incompatible with *RJR Nabisco* and *WesternGeco*, as at least two other circuits have held.  *See SEC v. Morrone*, 997 F.3d 52, 60 (1st Cir. 2021) (finding *Parkcentral* inconsistent with *Morrison*); *Stoyas v. Toshiba Corp.*, 896 F.3d 933, 950 (9th Cir. 2018) (same).

*Parkcentral* also is inconsistent with *Morrison*'s reasoning.  *Morrison* was critical of tests based on how much conduct occurred where because they lack

4

standards and are not based on statutes. *E.g.*, 561 U.S. at 257-58, 270-71. The "predominantly foreign" test suffers from similar evils. It is divorced from a basis in statute, as illustrated by the way the panel here used the test without considering the text or purpose of the CEA manipulation statute. And standards are unclear. *Parkcentral* referred to claims "so predominantly foreign as to be impermissibly extraterritorial" but leaves open how much predominance is needed. *Parkcentral* also leaves open whether predominance is based solely on conduct or includes factors such as impact on U.S. commerce.

Layering the predominantly foreign test on top of the focus test also creates a risk that some manipulation might not be subject to legal action in any jurisdiction. If persons in a foreign country engage in manipulative conduct targeted specifically at a U.S. exchange, courts in that country might conclude it is not their business—particularly if they find *Morrison* persuasive. Under *Parkcentral*, the manipulation might not be subject to U.S. law either, since the conduct occurred abroad. *Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986 F.3d 161, 166 (2d Cir. 2021) attempted to reconcile *Parkcentral* with *RJR Nabisco*, stating that *Parkcentral* is a "gloss" on *Morrison* and "must be viewed" in the context of the focus test. Nevertheless, to the extent *Cavello* endorses the predominantly foreign test as a separate standard added to the focus test, *see* 986 F.3d at 166-67, it is inconsistent with Supreme Court precedent and should be

5

reconsidered.

## II. The panel decision should be reheard to consider whether its extraterritoriality analysis was consistent with the CEA manipulation provision at issue.

The panel based its extraterritoriality analysis primarily on the location of manipulative conduct. Op. at 14-16. The decision should be reheard to consider whether this approach, also used in *Prime,* 937 F.3d at 108, is legally permissible in CEA manipulation cases. Several considerations show that Congress's concern in 7 U.S.C. § 13(a)(2) is protecting the integrity of prices on U.S. markets from manipulative distortions, regardless of the source of the manipulative conduct, so long as intent and causation can be established. In the language of *Morrison*, the integrity of prices in U.S. markets is the "focus" of the statute. Rehearing therefore is warranted to consider whether it is error to disregard or give little weight to the location of U.S. prices and markets that were manipulated when evaluating extraterritoriality.

First, the statutory language displays this focus. Section 13(a)(2) makes it unlawful to "manipulate or attempt to manipulate the *price* of any commodity *in interstate commerce*, or for *future delivery on or subject to the rules of any registered entity*." (emphases added). "Registered entity" means a U.S. regulated exchange or certain other U.S. regulated institutions that facilitate trading. *See* 7 U.S.C. §§ 1a(40) (defining "registered entity" to include regulated "board of

6

trade"), 1a(6) (defining "board of trade" as an "organized exchange or other trading facility"). Thus, section 13(a)(2) focuses on protecting prices in U.S. markets.

Second, manipulation legally rests on distorted prices. *See*, *e.g.*, *Frey v. CFTC*, 931 F.2d 1171, 1175 (7th Cir. 1991) (manipulation is the "intentional exaction of a price determined by forces other than supply and demand"); *In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513, 534 (S.D.N.Y. 2008) ("[M]anipulation deceives traders as to the market's true judgment of the worth of the commodities."). Identical conduct may or may not be manipulation depending on whether it is aimed at distorting prices. *Amaranth*, 587 F. Supp. 3d at 534. Moreover, manipulation frequently involves conduct *off* of an exchange that profits the perpetrator by distorting prices *on* an exchange. For example, "cornering the market" can involve buying "cash" (*i.e.*, physical) commodities to influence futures contract prices on an exchange. *E.g.*, *Great Western Food Distribs., Inc. v. Brannan*, 201 F.2d 476, 478-79 (7th Cir. 1953). Similarly, futures prices can be manipulated by "floating … false rumors." *Cargill, Inc. v. Hardin*, 452 F.2d 1154, 1163 (8th Cir. 1971). So connections between off-exchange conduct and prices are baked into the concept of manipulation and an extraterritoriality analysis that fails to recognize this is inconsistent with the purpose of the statute.

Third, the CEA's Findings and Purpose make clear that the purpose of the

CEA manipulation provisions is to protect the integrity of prices in U.S. markets. 7 U.S.C. § 5(a) states that markets subject to the CEA are "affected with a national public interest" because, among other benefits, they provide a means for "discovering prices, or disseminating pricing information." 7 U.S.C. § 5(b) then says that the CEA "deter[s] and prevent[s] price manipulation" to "foster these public interests" *i.e.*, the public interests in section 5(a) including price discovery and dissemination in fair and secure markets.

Fourth, Congress specifically intended the CEA to regulate U.S. futures contracts based on foreign commodities, explaining that "[w]hether a commodity is … produced in the United States or outside, makes little difference" to Americans affected by U.S. futures market prices for that commodity. S. Rep. No. 93-1131, at 19 (1974) (justifying extension of CEA to foreign commodities). This intent underscores that manipulation of a foreign commodity is covered by the CEA if the manipulation targets prices on a U.S.-regulated exchange.

Finally, the language of section 13(a)(2) is analogous to language of section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), which the Supreme Court held in *Morrison* establishes that statute's focus on "purchase-and-sale transactions" affected by prohibited conduct, not the conduct itself. 561 U.S. at 266-67. Similarly, 7 U.S.C. § 13(a)(2) does not punish manipulation per se but only manipulation of prices of commodities "in interstate commerce" or "on or

8

subject to the rules of any registered entity," thus demonstrating a focus on prices in U.S. markets analogous to the focus on purchases and sales in section 10(b).

*Prime* held that a manipulation claim was outside the focus of the CEA manipulation provisions because the manipulative conduct occurred overseas and affected a U.S. market via ripple effects. 937 F.3d at 106-08. That holding should be revisited en banc for the reasons stated above. *Prime* tried to distinguish *Morrison* on the ground that section 10(b) refers to securities registered on a "national securities exchange" while the CEA manipulation provisions do not. *Id.* (discussing 7 U.S.C. § 9(c)(1), which has language similar to section 13(a)(2)). But *Prime* overlooked that the relevant provisions refer to a "registered entity." As explained above, "registered entity" means a regulated futures exchange or similar institution and is the CEA equivalent of the "national securities exchange" language in section 10(b).

## III. The panel's application of the "predominantly foreign" test to CEA issues should be reheard.

The panel decision should also be reheard to determine whether, in applying the "predominantly foreign" test, it measured the foreignness of plaintiff's claim in ways that are inconsistent with the CEA.

First, it relied on the fact that plaintiff "traded a derivative that is tied to the value of a foreign asset." Op. at 14. Under the CEA, if a contract is listed on a U.S. exchange, it makes no difference if its value is based on a foreign or domestic

9

commodity. The same rules apply. *See*, *e.g.*, 7 U.S.C. § 7(d) (requirements for futures exchanges). In both cases a U.S. exchange and U.S. traders are dealing in a U.S. financial product for their own business purposes. As noted above, Congress specifically intended this result. *See* S. Rep. No. 93-1131, at 19.

Second, the panel gave no weight to the fact that the defendants, though acting overseas, directly manipulated the price of a futures contract on a U.S. exchange, exactly the conduct prohibited by section 13(a)(2). Op. at 15-16. The Yen-LIBOR and Euroyen TIBOR benchmark interest rates that allegedly were manipulated are commodities within the meaning of the CEA. 7 U.S.C. § 1a(19)(iii) (defining excluded commodities as "any economic or commercial index based on prices, rates, values, or levels").[1] *See also* 7 U.S.C. § 1a(9) (stating "commodity" includes any service, right, or interest in which a futures contract is dealt in). The value of the CME Euroyen TIBOR contract was defined by CME to mathematically equal 100 minus the Euroyen TIBOR rate so, by manipulating the

---

[1] Benchmark rates and the like are defined as "excluded commodities," 7 U.S.C. § 1a(19)(iii), a historical term of art that does not imply that they are excluded from the CEA. The CEA defines three categories of commodities: "excluded," "exempt," and "agricultural," with slightly different requirements. *See* 7 U.S.C. § 1a(20) (defining "exempt commodity" as "a commodity that is not an excluded commodity or an agricultural commodity"). From 2000 to 2010, "excluded commodities" were "excluded" from many CEA requirements, but never from the definition of "commodity" itself. *See* 7 U.S.C. § 2(d) (2001), *amended by* Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 723(a)(1)(A), 124 Stat. 1376, 1673 (2010); CFTC Amicus Brief, (Nov. 29, 2022), Dkt. 383.

Euroyen TIBOR benchmark, defendants directly affected the price of a contract on a U.S. exchange. *See* JA 1372-73.

The panel states that, in disregarding the link between a manipulated foreign benchmark and a U.S. futures contract, it followed *Prime*. Op. at 14-15. If so, that is another reason to reconsider *Prime* en banc. Moreover, even under *Prime*, the link between the benchmark and the affected U.S. futures price is sufficient in this case to establish domesticity. In *Prime*, there were multiple stages of indirect influence between the foreign benchmark that was tampered with and the price of a U.S. contract; while, in this case, the value of the U.S. contract was *defined* in terms of the benchmark. *See Prime*, 937 F.3d at 106-08.

## CONCLUSION

The amended panel decision should be reheard en banc.

Respectfully submitted,

*/s/ Martin B. White*

Robert A. Schwartz
  *General Counsel*
Anne W. Stukes
  *Deputy General Counsel*
Martin B. White
  *Senior Assistant General Counsel*
Kyle M. Druding
  *Assistant General Counsel*
U.S. COMMODITY FUTURES TRADING
COMMISSION
Three Lafayette Centre
1155 21st Street, N.W.

11

Washington, D.C. 20581
Phone:  (202) 993-1390
Fax:  (202) 418-5127
mwhite@cftc.gov

*Counsel for Amicus Curiae*

Dated:  January 19, 2022

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing Brief of Amicus Curiae to be filed with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all CM/ECF users registered in this case.  I further certify that I caused the required number of bound copies of the Brief of Amicus Curiae to be filed with the Clerk of the Court via UPS Next Day Air.


/s/ *Martin B. White*
Martin B. White


Dated:  January 19, 2023

# CERTIFICATE OF COMPLIANCE

1.     I hereby certify that this brief complies with the type-volume limits of Fed. R. App. P. 29(b)(4) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 2600 words.

2.     I hereby certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Times New Roman.


/s/ *Martin B. White*
Martin B. White


Dated:  January 19, 2023