

March 7, 2023

**VIA ECF**
Hon. Valerie E. Caproni
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

  Re: <u>In re London Silver Fixing, Ltd., Antitrust Litig.</u>, No. 14-MD-2573

Dear Judge Caproni:

  On February 27, 2023, the Second Circuit issued its decision in *In re Platinum and Palladium Antitrust Litigation*, No. 20-1458 ("Op."), a copy of which is attached hereto. *Platinum* definitively resolves the questions in Defendants' pending motion for judgment on the pleadings in Plaintiffs' favor, so expressly and objectively that no further briefing should be necessary. Instead, Plaintiffs respectfully request that the Court deny Defendants' motion.

  In *Platinum*, investors in platinum and palladium brought antitrust and CEA claims against the banks (including HSBC) responsible for setting the global benchmarks or "Fixing" for those respective metals. Op. at 4, 7-9. The *Platinum* defendants raised many of the same arguments as the Defendants have raised in their motion for judgment on the pleadings here, including that:

- Futures traders are not efficient enforcers of the antitrust laws because they transacted via an exchange rather than "directly" with any defendant, citing *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103 (2d Cir. 2021) (*Schwab II*). *Compare* ECF No. 605 at 17-25 *with* Op. at 25-30.
- Plaintiffs' CEA claims were impermissibly extraterritorial, citing *Prime International Trading, Ltd. v. BP P.L.C.*, 937 F.3d 94 (2d Cir. 2019) and *Laydon v. Coöperatieve Rabobank U.A.*, 55 F.4th 86, 98-99 (2d Cir. 2022). *Compare* ECF No. 605 at 25-29 *with* Op. at 32-36.
- Plaintiffs failed to allege injury for either antitrust or CEA purposes under *Gamma Traders – I LLC v. Merrill Lynch Commodities, Inc.*, No. 21-853, 2022 WL 2821504 (2d Cir. July 20, 2022) ("*Gamma*"). *Compare* ECF No. 605 at 12-16 *with In re Platinum & Palladium Antitrust Litig.*, No. 20-1458, ECF No. 240-1, at 1 ("*Gamma* Letter") (defendants' supplemental law letter arguing "*Gamma* confirms that plaintiffs do not adequately plead either antitrust injury or 'actual injury' caused by a violation of the Commodity Exchange Act.").

  The Defendants also relied heavily upon the district court's motion to dismiss opinions in *Platinum* in support of their arguments for dismissal here. *See* ECF No. 605 at 3, 9, 18, 24, 26, 28. For the reasons detailed below, the Second Circuit's opinion in *Platinum* requires denial of Defendants' Rule 12(c) motion.

www.lowey.com

44 South Broadway, Suite 1100, White Plains, NY 10601-4459 (p) 914-997-0500 (f) 914-997-0035
One Tower Bridge, 100 Front Street, Suite 520, West Conshohocken, PA 19428 (p) 215-399-4770 (f) 610-862-9777



### The Exchange Plaintiffs Are Efficient Enforcers

In reasoning equally applicable here, the Second Circuit in *Platinum* held that platinum and palladium futures traders are efficient enforcers of the antitrust laws, rejecting identical arguments asserted by Defendants in their Rule 12(c) motion.[1]

First, the Second Circuit found that "Exchange Plaintiffs suffered a direct injury" "at the first step" by alleging (just like Plaintiffs here) that "defendants manipulated the futures market to profit from futures contracts transactions, while the Exchange Plaintiffs simultaneously lost money through futures contracts transactions in the same market." Op. at 25; *compare* TAC ¶ 14 ("This coordinated manipulative conduct was intended to capitalize on the zero-sum nature of derivatives trading, including in COMEX silver futures contracts, and to extract illicit profits for Defendants from Plaintiffs and other Class members who held the opposite position"); *see also id.* ¶¶ 111, 113, 201-202, 206-219, 328, 377.

The Second Circuit rejected defendants' argument that because the futures exchange serves as the nominal counterparty to all futures transactions on the exchange, plaintiffs' injury was not direct: "To argue, as the defendants do, that interposing a clearinghouse immunizes misconduct on an exchange market from antitrust liability is to exalt form over substance." Op. at 26. The Second Circuit also dispensed with the notion that futures traders could only be directly injured if the defendants dominated the futures market in question: "Although the defendants' market share may inform the amount of damages the Exchange Plaintiffs can seek, we disagree that it can render the Exchange Plaintiffs' injury indirect." *Id.* at 27.

Further, the court found that there were "no more direct victims than the Exchange Plaintiffs." *Id.* at 28. On this point, the *Platinum* defendants had argued (like Defendants here) that traders in the physical metals market who had traded directly with them would be the most direct victims. *See id.* at 27. The court was unpersuaded: "[B]ecause we hold that the Exchange Plaintiffs are direct victims, even if we were to include the victims in the physical market in our analysis, there is no reason to think that those victims are *more* direct than the Exchange Plaintiffs. Nor does it make sense for victims in one market to disqualify victims in a different market from bringing suit." *Id.* at 29.

Finally, the court rejected defendants' arguments that damages would be overly speculative: ("A damages calculation for a market manipulation scheme…is hardly beyond the ken of federal courts," Op. at 29-30), and held that there was no risk of duplicative recoveries, because there was no intermediary between the futures traders and the defendants who could sue for defendants' anticompetitive behavior in the exchange markets. *Id.* at 30. Having found that each of the four efficient enforcer factors favored plaintiffs, the court held that the futures trader plaintiffs had antitrust standing.

---

[1] The court also held that a plaintiff that had traded physical metals with third parties was not an efficient enforcer. Op. at 17-24. Accordingly, Plaintiffs here no longer assert antitrust claims on behalf of physical silver traders.



### Plaintiffs' CEA Claims Are Domestic

Like the Silver Fixing, the platinum and palladium fixing calls took place in London. Brief for Plaintiffs-Appellants-Cross-Appellees, *In re Platinum & Palladium Antitrust Litig.*, No. 20-1458, ECF No. 80, at 3. The Second Circuit nonetheless held that the plaintiffs' CEA claims for manipulating the benchmark prices of platinum and palladium were domestic. *See* Op. at 31-36. The allegations upon which the court relied in reaching that conclusion are equally present here and compel the same result.

"[S]tating a proper claim under [CEA] section 22 has two requirements": a domestic transaction, and domestic conduct by defendants "that is violative of a substantive provision of the CEA." Op. at 32 (quoting *Prime International Trading, Ltd. v. BP P.L.C.*, 937 F.3d 94, 105 (2d Cir. 2019)). The Second Circuit found that the domestic transaction requirement was satisfied by the futures traders' allegations "that they sold NYMEX platinum and palladium futures contracts." Op. at 33; ("Such sales on a domestic futures exchange are domestic transactions."). Similarly, Plaintiffs here allege that they traded COMEX silver futures contracts. TAC ¶ 328.

With respect to domestic conduct, the Second Circuit noted that "each of [the defendants] conducts precious metals trading in the United States." Op. at 34. The plaintiffs alleged that defendants "collusively shar[ed] and act[ed] on non-public information regarding client orders (including stop loss orders) shortly before and during the AM and PX Fixing," resulting in "moving Physical and NYMEX Platinum and Palladium prices in advance of and even during the Fixing." *Id.* at 35. Their theory was that defendants "traded in the physical and NYMEX markets to influence the Fixing," in addition to profiting from it. *See* Op. at 35. The Second Circuit specifically rejected the district court's finding that this theory was "implausible," and stated that the "district court erred in discounting" it. *Id.* (citing *In re Platinum & Palladium Antitrust Litig.*, 449 F. Supp. 3d 290, 332 (S.D.N.Y. 2020)). Accordingly, plaintiffs' allegations regarding defendants' trading on United States exchanges sufficed to allege "domestic conduct" justifying a domestic application of the CEA.

Here too, Plaintiffs allege that Defendants engaged in manipulative trading on COMEX in tandem with their manipulation of the Fixing itself, using their "advance knowledge of the Fix price direction" to "consistently generate[] large returns" just before and during the Fixing, at the expense of their unwitting counterparties. TAC ¶ 205; *see also id.* at ¶¶ 199-219. Just as in *Platinum*, Plaintiffs allege that "Defendants' silver trading positions directly **contributed to** the pricing dysfunction in the silver market as Defendants engaged in collusive trades to **create** and profit from artificiality in the price of physical silver and silver financial instruments." TAC ¶ 249 (emphasis added); *see also id.* ¶ 285 (chat between Deutsche Bank and HSBC "shar[ing] information regarding Deutsche Bank's and HSBC's net silver trading positions during and after the Fix"); *id.* ¶ 16 ("Defendants also illegally shared proprietary information about their incoming silver order flow heading into the start of the Silver Fix in order to coordinate illegitimate transactions in advance of the daily auction."). These allegations constitute "domestic conduct" under *Platinum* and render Plaintiffs' CEA claims domestic.

### Plaintiffs Have Adequately Alleged Antitrust and CEA Injury

Finally, *Platinum* disposes of Defendants' argument that Plaintiffs have failed to allege antitrust or CEA injury. The *Platinum* defendants submitted a supplemental law letter to the Second Circuit on *Gamma* making the identical arguments that Defendants have put forth in their 12(c) motion here. In



particular, the defendants in *Platinum* asserted that under *Gamma*, "plaintiffs cannot establish actual injury simply by alleging 'sales on manipulation dates,'" for either antitrust or CEA purposes. *Gamma* Letter at 1. Instead, they argued, the plaintiffs would have had to plead "precisely when" during the trading day they had traded, to "justify[] an inference that they sold in the brief window during which defendants' suppression purportedly affected prices." *Id.* at 1-2. *Compare* ECF No. 605 at 12-16 (making same argument here).

The Second Circuit rejected this argument, finding instead that the plaintiffs had indeed pled antitrust injury. *See* Op. at 17 ("[T]he Exchange Plaintiffs have antitrust standing."); *id.* at 16 (explaining that antitrust standing requires plaintiffs to show antitrust injury as well as efficient enforcer status).[2] It did so without even bothering to directly address *Gamma*, in all likelihood because (as Plaintiffs have explained), the spoofing scheme at issue in *Gamma* is highly distinguishable from the benchmark manipulation allegations here. *See* ECF No. 606 at 15-19. *Platinum* thus confirms that *Gamma* does not change this Court's prior holding that Plaintiffs pled antitrust injury by alleging they traded on days that Defendants manipulated the Fixing.

Indeed, the facts in this regard are even stronger here than in *Platinum*. In *Platinum*, the plaintiffs "affirmatively plead that the effects of defendants' manipulation lingered for only a short time after the auction before rebounding to market prices." *Gamma* Letter at 1-2. Plaintiffs here have pled just the opposite. The TAC includes economic analyses showing that the price impact of Defendants' manipulation lasted throughout the trading day and was also cumulative over time. *See* TAC ¶¶ 163, 195-98; Figs. 14-15, 33-34. Allegations that Plaintiffs were injured when they traded on the same days that Defendants manipulated the Fixing are thus even more plausible than those in *Platinum*.

***

For the foregoing reasons and those set forth in Plaintiffs' earlier briefing, Defendants' motion for judgment on the pleadings should be denied.

Dated: March 7, 2023  
White Plains, New York

Respectfully submitted,

**LOWEY DANNENBERG, P.C.**

By: /s/*Vincent Briganti*  
Vincent Briganti  
Margaret MacLean  
Johnathan Seredynski  
44 South Broadway, Suite 1100  
White Plains, New York 10601  
Tel.: 914-997-0500  
Fax: 914-997-0035  
vbriganti@lowey.com  
jseredynski@lowey.com

---

[2] With respect to CEA injury, the district court had never ruled on the issue one way or the other. The Second Circuit accordingly vacated dismissal of the CEA claims on extraterritoriality grounds and remanded for consideration of the substantive elements of the claim. *See* Op. at 36.



March 7, 2023
Page 5

mmaclean@lowey.com

Robert Eisler
Chad Holtzman (*pro hac vice*)
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue, 29th Floor
New York, NY 10017
Tel.: 646-722-8500
Fax: 646-722-8501
reisler@gelaw.com
delman@gelaw.com
choltzman@gelaw.com

*Counsel for Plaintiffs*